IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JIRI PIK                        :       CIVIL ACTION
                                :
     v.                         :
                                :
THE UNIVERSITY OF               :
PENNSYLVANIA, et al.            :       NO. 08-5164


MEMORANDUM

McLaughlin, J.                                    October 7, 2010


          This action arises out of the plaintiff's brief time as

a graduate student at the University of Pennsylvania ("Penn")

during the 2003-2004 academic year, and his subsequent separation

from the University.  The plaintiff alleges that during his time

at Penn, he had a conflict with a professor that led to numerous

appeals to the University, the plaintiff's subsequent referral to

Penn's counseling service, and his ultimately being forced to

take a medical leave of absence.  The plaintiff alleges that Penn

denied his return from medical leave by imposing unreasonable

conditions.  Further, the plaintiff argues that Penn provided

false and damaging references to his subsequent employers, which

led to the termination of his employment.

          In his pro se complaint, the plaintiff alleges state

law claims for breach of contract and negligence (Count I), as

well as fraudulent misrepresentation (Count II).  In addition,

the plaintiff alleges the following federal claims: violation of

the Health Insurance Portability and Accountability Act ("HIPAA")

and the patient confidentiality provisions of 42 U.S.C. § 290dd-2
(Count III); violation of Title VII of the Civil Rights Act of
1964 (Count IV); and a claim pursuant to 42 U.S.C. § 1983 for
violation of the plaintiff's constitutional right to a liberty
interest in his reputation (Count V).  Penn has moved to dismiss
Count I in part, and Counts II through V in their entirety, for
failure to state a claim.  The Court will grant the defendant's
motion to dismiss in part and deny it in part.

I.  <u>Facts as Alleged in the Complaint</u>

        In evaluating a motion to dismiss under Rule 12(b)(6),
a court must accept all well-pleaded facts as true, and must
construe the complaint in the light most favorable to the
plaintiff.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir.
2009).[1]

        The plaintiff, Jiri Pik, was a graduate student in the
Department of Economics at Penn during the 2003-2004 academic
year.  During that time, the plaintiff was enrolled in a lecture
course taught by Professor David Cass, with whom the plaintiff

_____

        [1]When evaluating a motion to dismiss, the court should
disregard any legal conclusions.  The court must then determine
whether the facts alleged are sufficient to show that the
plaintiff has a "plausible claim for relief."  <u>Fowler</u>, 578 F.3d
at 210.  If the well-pleaded facts do not permit the court to
infer more than the mere possibility of misconduct, then the
complaint has alleged, but it has not shown, that the pleader is
entitled to relief.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949
(2008).

developed a conflict.  The plaintiff was singled out by Professor

Cass, who ridiculed him in front of his classmates.  In addition,

Professor Cass made inappropriate physical contact with the

plaintiff, prevented him from attending classes and office hours,

and otherwise threatened him.  Compl. ¶¶ 8-9.

        In light of his conflict with Professor Cass, the

plaintiff contacted the University Ombudsman and the Economics

Department Chair, whose interventions were "fruitless."  Compl.

¶¶ 9, 13.  After receiving a poor grade on his final exam in

Professor Cass's course, the plaintiff was refused the

opportunity to review his exam, and his subsequent appeals to the

administration were denied.  Compl. ¶¶ 14-15.  As a result of

the plaintiff's multiple appeals, he was referred to Penn's

psychological services ("CAPS") for an evaluation.  There, the

plaintiff met with a counselor and a psychiatrist, and was

diagnosed as suffering from a "euphoric/manic state."  Compl. ¶¶

16-21; Session/Appointment Notes, App. 3 to Pl. Compl.  The

plaintiff was then forced to take a medical leave due to

"exhaustion."  The plaintiff's medical leave was effective April

23, 2004, pursuant to a letter from then-Associate Dean Walter

Licht, which outlined the conditions for the plaintiff's return.[2]

Compl. ¶¶ 18-19; App. 4 to Pl. Compl.

_____

        [2]Specifically, the plaintiff's eligibility to return to Penn
was conditioned on weekly meetings with a therapist or physician,
and documentation demonstrating resolution of the plaintiff's
medical issues and his ability to pursue academic work.

The plaintiff informed Penn of his intent to return on July 27, 2004. On August 27, 2004, the plaintiff received a letter from Penn informing him that the conditions for his return had not been met and a final decision was still pending. Compl. ¶¶ 30-31; App. 5 to Pl. Compl. Subsequently, on September 1, 2004, the plaintiff received a letter from Associate Dean Jack Nagel informing him that his request to return had been denied as the conditions had not been satisfied. App. 6 to Pl. Compl. In conjunction with the denial of his request, the plaintiff received a letter from Dr. William Alexander of CAPS, detailing the steps the plaintiff would need to take to return to Penn. Dr. Alexander requested written documentation from a psychiatrist evidencing the plaintiff's stability. App. 7 to Pl. Compl.

Subsequently, the plaintiff visited both a psychologist and psychiatrist in Prague, who agreed that the plaintiff's treatment had been sufficient and that the plaintiff should return to Penn. Compl. ¶¶ 38-39; App. 1 to Pl. Compl. The plaintiff sent this information, including a final report by his psychologist, to Penn on December 1, 2004. Compl. ¶ 40. Nonetheless, Dr. Alexander sent the plaintiff a letter on December 22, 2004, indicating that the plaintiff had still not complied with the conditions for his return.[3] App. 8 to Pl.

_____

[3]In particular, Dr. Alexander claimed the report was not from a psychiatrist, and it did not address the plaintiff's mood and thought disorder or treatment in support thereof.

Compl.  Finally, on January 4, 2005, Associate Dean Jack Nagel
sent the plaintiff an e-mail indicating that the plaintiff had
been dropped from the rolls and was no longer a Ph.D. student at
Penn, in light of his failure to address his medical issues and
the seeming unlikelihood of his doing so in the future.  App. 10
to Pl. Compl.  The plaintiff's appeals, culminating with Penn
President Amy Gutmann, were denied.  App. 11-13 to Pl. Compl.

Since the effective date of the plaintiff's medical
leave in April of 2004, Penn has provided third parties with
false references that have damaged the plaintiff.  A separate
lawsuit based on the defamatory references is pending in London.
Compl.  ¶¶ 45-46.


II.  Analysis

The Court has both federal question jurisdiction and
diversity jurisdiction over this case.  Although the plaintiff
checked only federal question jurisdiction in the civil cover
sheet as the basis for his complaint, he alleges that he is a
citizen of the Czech Republic and is seeking damages in excess of
$75,000.  Moreover, Penn is a citizen of Pennsylvania.
Therefore, the Court has diversity jurisdiction pursuant to 28
U.S.C. § 1332.

The defendant moves to dismiss Count I (breach of
contract and negligence) in part, and Counts II through V in

5

their entirety, pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant the motion to dismiss in part and deny it in part.

### A.   Federal Claims

The plaintiff brings three claims against Penn based on violations of federal law, alleging: (1) violation of the Health Insurance Portability and Accountability Act ("HIPAA") and 42 U.S.C. § 290dd-2 (Count III); (2) violation of Title VII of the Civil Rights Act of 1964 (Count IV); and (3) a claim pursuant to 42 U.S.C. § 1983 for violation of the plaintiff's constitutional rights (Count V). The Court will grant the motion to dismiss as to all federal claims.

#### 1.   Count III: Violation of HIPAA and § 290dd-2

In Count III of the complaint, the plaintiff alleges that the defendant violated the confidentiality provisions of HIPAA's Privacy Rule, 45 C.F.R. §§ 160, 164, and the patient confidentiality provisions of 42 U.S.C. § 290dd-2,[4] by disclosing information from the plaintiff's medical records both internally and to third parties, without his consent. The defendant argues

---

[4]Although the plaintiff styles his claim as a violation of 42 U.S.C. §§ 290dd-3, 390ee-3, these sections were combined into the present § 290dd-2 pursuant to amendments to the Act in 1992.

that neither of these federal statutes provides a private right of action and therefore Count III fails to state a claim.

The Court of Appeals for the Third Circuit has not specifically addressed whether there is a private right of action under HIPAA. However, other courts within the Third Circuit that have considered this issue have found that no private right of action exists. See, e.g., Buchanan v. Gay, 491 F. Supp. 2d 483, 497 (D. Del. 2007) (surveying case law and finding no private right of action); Rigaud v. Garofalo, 2005 U.S. Dist. LEXIS 7791, at *7 (E.D. Pa. May 2, 2005) (finding no private right of action given alternative enforcement mechanisms). Federal courts outside of the Third Circuit, including the Court of Appeals for the Fifth Circuit, have also found no private right of action under HIPAA. See Acara v. Banks, 470 F.3d 569, 571-72 (5th Cir. 2006) (noting that every district court to consider the issue has agreed that HIPAA creates no private right of action).

The Court agrees with the reasoning of these cases and finds no private right of action under HIPAA. To determine whether a statute provides a private right of action, the Court must decide whether Congress intended to create both a personal right and a private remedy. Wisniewski v. Rodale, Inc., 510 F.3d 294, 301 (3d Cir. 2007). In analyzing whether Congress intended a personal right, the Court must determine whether the statute contains "rights-creating" language. Rights-creating language

focuses on the individuals protected by the statute rather than the persons regulated by it.  Id. at 301-02.  In other words, a statute with rights-creating language speaks in terms of entitlements rather than prohibitions.  Id.  Further, in determining whether a statute creates a private remedy, an important factor is whether the statute provides for an alternative method of enforcement.  Id. at 305.  When a statute provides for alternative enforcement mechanisms, there is a strong presumption against implied rights of action.  Id.

HIPAA does not confer rights on a specific class of persons, but rather focuses on the persons that are regulated by the statute: those with access to protected medical information.  See 42 U.S.C. § 1320d-1.  The statutory text contains prohibitions rather than entitlements.  Wisniewski, 510 F.3d at 302.  Therefore, the Court does not find that Congress intended to create personal rights.  Further, HIPAA specifically delegates enforcement to the Secretary of Health and Human Services and State attorneys general.  42 U.S.C. § 1320d-5.  As a result, the Court does not find a private remedy.  Accordingly, the plaintiff's claim under HIPAA must be dismissed.

Similarly, the Court concludes that there is no private right of action under 42 U.S.C. § 290dd-2.  Only one court within the Third Circuit appears to have considered whether § 290dd-2 creates a private right of action, and concluded that it does

not.  Oates v. City of Phila. Civ. Serv. Comm'n, 1998 U.S. Dist.
LEXIS 2450, at *2 (E.D. Pa. Feb. 18, 1998).  Several federal
appellate courts outside of the Third Circuit have found no
private right of action under § 290dd-2.  See, e.g., Chapa v.
Adams, 168 F.3d 1036, 1038 (7th Cir. 1999) (holding that § 290dd-
2, as criminal statute, creates rights in favor of society rather
than particular individuals); Ellison v. Cocke County, 63 F.3d
467, 471 (6th Cir. 1995) (finding no congressional intent to
imply a private right of action).

        The Court agrees with the case law and finds no private
right of action under § 290dd-2.  Much like HIPAA, § 290dd-2 does
not contain rights-creating language but rather focuses on the
regulation of those with access to patient records.  42 U.S.C. §
290dd-2; see also Wisniewski, 510 F.3d at 302.  The Court
therefore finds no personal rights.  Further, the statute
provides for an explicit remedy in the form of criminal fines,
and as a result the Court does not find a private remedy.  42
U.S.C. § 290dd-2(f); see also Wisniewski, 510 F.3d at 305.
Accordingly, the Court finds no private right of action under §
290dd-2 and the plaintiff's claim must be dismissed.

        Because neither HIPAA nor § 290dd-2 creates a private
right of action, the plaintiff's claims in Count III of the
complaint are dismissed.  The Court notes that in his opposition
to the motion to dismiss, the plaintiff has advanced other

theories based on the disclosure of confidential information. However, none of those issues is properly before the Court, and the plaintiff would have to amend his complaint to allege additional claims. The Court expresses no view at this time on the claims advanced in the plaintiff's opposition.

## 2. Count IV: Violation of Title VII

The plaintiff also asserts a claim for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, due to the defendant's discrimination against the plaintiff based on his nationality.[5] The defendant argues that the plaintiff failed to exhaust his administrative remedies by filing a timely charge with the Equal Employment Opportunity Commission (EEOC), and therefore his claim must be dismissed.

In order to bring a Title VII claim, a plaintiff must first exhaust his administrative remedies before he will be allowed access to federal judicial relief. Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000). A Title VII plaintiff must file a discrimination charge with the EEOC before proceeding to federal court. 42 U.S.C. § 2000e-5(e). In a state such as Pennsylvania, where a state agency is authorized to grant relief for federally prohibited employment discrimination, a

---

[5]Specifically, the plaintiff claims that Professor Cass and "other University Officials" discriminated against him based on his nationality.

plaintiff must submit an EEOC charge within 300 days of the challenged employment action. § 2000e-5(e)(1); <u>Watson</u>, 235 F.3d at 854. If a plaintiff fails to file a discrimination charge within the statutory period, his claim in federal court is time-barred. <u>Mikula v. Allegheny County</u>, 583 F.3d 181, 185-86 (3d Cir. 2009).

Although the plaintiff's complaint does not plead compliance with the EEOC filing requirement, the plaintiff in his opposition argues that he filed a claim with the Department of Labor ("DOL") on February 9, 2008. Pl.'s Opp'n to Mot. to Dismiss at 22. Further, the plaintiff's sur-reply includes an e-mail from the DOL indicating that his case has been referred to the EEOC. Pl.'s Sur-Reply to Mot. to Dismiss at 4. However, the plaintiff's DOL filing occurred over three years after the plaintiff's separation from Penn and the alleged discriminatory events occurred.[6] Even assuming that the DOL forwarded the

_____

[6]Although the allegedly discriminatory events took place during the 2003-2004 academic year, out of an abundance of caution, the Court will measure the time for the plaintiff's EEOC filing from the plaintiff's final communication with Penn, which appears to have been on January 24, 2005, when Penn President Amy Gutmann denied the plaintiff's appeal. App. 13 to Pl. Compl.

plaintiff's charge to the EEOC, this occurred well outside of the statutory window.[7]

Accordingly, because the plaintiff filed his charge with the EEOC nearly three and a half years after the alleged discriminatory events took place, his Title VII claim in Count IV must be dismissed as time-barred.


3.    Count V: The § 1983 Claim

The plaintiff claims that the defendant violated his constitutional rights to reputation and liberty by discriminating against him and causing "mayhem."[8]  The defendant argues that, as a private party, it cannot be subject to a claim based on 42 U.S.C. § 1983, and therefore the claim must be dismissed.

Section 1983 prohibits interference with federal rights that occur under color of state law.  Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).  A plaintiff asserting a § 1983 claim must

_____

[7]Moreover, the plaintiff's labeling his complaint as "exceptional" does not suffice to invoke an equitable tolling exception to the statutory period, when the plaintiff has otherwise made no argument in support thereof.  Equitable tolling may be appropriate if: (1) the defendant has actively misled the plaintiff; (2) the plaintiff has "in some extraordinary way" been prevented from asserting his rights; or (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum.  Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 753 (3d Cir. 1983).  The plaintiff has not alleged any of these bases for equitable tolling, and the Court finds none in the record.

[8]Although the plaintiff does not identify 42 U.S.C. § 1983 as the basis for his claim, the Court assumes that the plaintiff intends to assert a § 1983 claim for violation of his liberty interest in his reputation under the Fourteenth Amendment.

show that the challenged conduct can fairly be characterized as state action. <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 923 (1982). Private conduct can be classified as state action when the facts of the case reveal that the defendant's actions were "fairly attributable to the State." <u>Rendell-Baker</u>, 457 U.S. at 838. If the defendant's action is not state action, the Court's inquiry ends. <u>Id.</u>

The Supreme Court has developed several tests to satisfy the state action inquiry, including the close nexus test, the government compulsion test, the traditional government function test, and the symbiotic relationship test. <u>Rendell-Baker</u>, 457 U.S. at 841-42; <u>see also</u> <u>Groman v. Township of Manalapan</u>, 47 F.3d 628 (3d Cir. 1995). However, regardless of the approach a court employs, the court must:

> remain focused on the heart of the state action
> inquiry, which ... is to discern if the defendant
> exercised power possessed by virtue of state law
> and made possible only because the wrongdoer is
> clothed with the authority of state law.

<u>Groman</u>, 47 F.3d at 639 (citations omitted).

The Court of Appeals for the Third Circuit has examined the question of state action in the context of so-called "state-related" institutions. State-related institutions, such as Temple University ("Temple") and the University of Pittsburgh ("Pitt"), have a statutory relationship with Pennsylvania, through which the Commonwealth commits to annual appropriations,

and has such powers as the right to set tuition, to appoint
university trustees, and to subject the universities to auditing
and reporting requirements.  See 24 Pa. Stat. Ann. § 2510-202;
Krynicky v. University of Pittsburgh, 742 F.2d 94, 102-03 (3d
Cir. 1984).  The Court of Appeals for the Third Circuit has held
that state-related institutions such as Temple and Pitt are so
intertwined with the Commonwealth so as to be state actors.  See
Krynicky, 742 F.2d at 102.  However, the Third Circuit noted that
state contributions are not dispositive, and cannot transform an
otherwise private actor into a public actor.  Instead, the key is
"the affirmative state act of statutorily accepting
responsibility for these institutions."  Id.

        In contrast, Penn is a "state-aided" institution, whose
relationship with the Commonwealth is not predicated on a statute
the way a state-related institution is.  Although state-aided
institutions such as Penn receive substantial funds from the
Commonwealth,

            their structures have not been modified nor their
            operations subject to legislative regulation to
            the same degree as "state-related" institutions.

Schier v. Temple Univ., 576 F. Supp. 1569, 1573 (E.D. Pa. 1984),
aff'd sub nom. Krynicky v. University of Pittsburgh, 742 F.2d 94
(3d Cir.), cert denied, 471 U.S. 1015 (1984).

        In Imperiale v. Hahnemann Univ., 776 F. Supp. 189 (E.D.
Pa. 1991), aff'd, 966 F.2d 125 (3d Cir. 1992), another judge of

14

this Court analyzed the actions of Hahnemann University ("Hahnemann"), a state-aided institution, under <u>Krynicky</u> and the state action tests, and concluded that Hahnemann was not a state actor. Although Hahnemann received appropriations from the Commonwealth, Hahnemann was not subject to pervasive state regulations, and the University set its own tuition and was governed by a private board of trustees. <u>Id.</u> at 198-200. The fact that Hahnemann received substantial state funds with conditions attached was not enough to turn Hahnemann into a state actor. <u>Id.</u> at 198-199. The Court of Appeals for the Third Circuit agreed with the District Court's analysis and found no state action under the various tests. <u>Hahnemann</u>, 966 F.2d at 126.

A judge of this Court has also held that LaSalle University is a private actor, notwithstanding government regulation and funding of the University.[9] <u>Brogan v. LaSalle Univ.</u>, 70 F. Supp. 2d 556, 569-70 (E.D. Pa. 1999); <u>see also Chyatte v. University of Pennsylvania</u>, 1990 U.S. Dist. LEXIS 11306, at *2 (E.D. Pa. Aug. 28, 1990) (noting that Penn and Williams College "do not appear to be state actors.")

The Court finds these cases to be persuasive and holds that Penn is not a state actor for purposes of the plaintiff's §

---

[9]Like Hahnemann, LaSalle has a private board of trustees and sets its own tuition and admissions standards. <u>See</u> <u>Brogan</u>, 70 F. Supp. 2d. at 569.

1983 claims.  Penn is more properly analogized to Hahnemann and
LaSalle than Temple or Pitt.  Penn's relationship is not
predicated on a statute with the Commonwealth whereby the state
has "statutorily accept[ed] responsibility."  See Krynicky, 742
F.2d at 102.  The Commonwealth does not set Penn's tuition and,
although it provides financial assistance to Penn, it is under no
obligation to make future appropriations.  See Hahnemann, 776 F.
Supp. at 198.  Penn's challenged actions are therefore not
"fairly attributable to the State."  Rendell-Baker, 457 U.S. at
838.  Accordingly, the Court will dismiss the plaintiff's claim.


    B.    State Claims

        The plaintiff brings two counts based on state law,
alleging breach of contract and negligence (Count I) and
fraudulent misrepresentation (Count II).  The Court will grant in
part and deny in part the defendant's motion to dismiss as to
these claims.


    1.    Count I: Breach of Contract and Negligence

        In Count I, the plaintiff alleges breach of contract
based on implied contractual terms, including the defendant's
promise to treat the plaintiff with dignity, to exercise
reasonable skill and care, and to reinstate the plaintiff upon
satisfaction of the terms of his medical leave.  The plaintiff

also alleges breach of express contractual terms, including various codes governing academic integrity, classroom policy, student grievances, and the Commonwealth's and Penn's anti-hazing regulations. The plaintiff styles his claim as sounding in both breach of contract and negligence, and demands damages for emotional distress.

The defendant moves to dismiss Count I in part. First, the defendant argues that the plaintiff's breach of contract claim must be dismissed insofar as it alleges breach of implied contractual terms. According to the defendant, contract claims against a private university can only be based upon written terms.

Because the Court is not convinced that a contract claim against a university is limited exclusively to writings, it will deny the motion to dismiss as to claims based on implied contractual terms. The relationship between a private institution and a student is reviewed like "any other agreement between two private parties," and "should be treated as any other contract." Reardon v. Allegheny College, 926 A.2d 477, 480-81 & n.2 (Pa. Super. 2007). To that end, the plaintiff must be able to point to a specific promise or undertaking, and the means by which that promise was breached. See Gundlach v. Reinstein, 924 F. Supp. 684, 688-89 (E.D. Pa. 1996) (analyzing contract claim against university where plaintiff conceded no written contract

existed).  The plaintiff is not limited exclusively to writings

in making this showing.  Accordingly, the Court will deny the

motion to dismiss as to the claims based on implied terms.

In addition, the defendant argues that the plaintiff's

claim based on violation of the Commonwealth's and Penn's anti-

hazing regulations must be dismissed as inapplicable to the

plaintiff.  The Court will dismiss the plaintiff's claim insofar

as it alleges violation of the anti-hazing laws.  Both the

Commonwealth and Penn define hazing as:

> Any action or situation which recklessly or
> intentionally endangers the mental or physical
> health or safety of a student or which willfully
> destroys or removes public or private property for
> the purpose of initiation or admission into or
> affiliation with, or as a condition for continued
> membership in, any organization operating under
> the sanction of or recognized as an organization
> by an institution of higher education.

24. Pa. Stat. Ann. § 5352.  The few cases interpreting the

definition of "hazing" have done so in the context of initiation

into an organization such as a fraternity or sorority.  See

Griffen v. Alpha Phi Alpha, Inc., 2006 U.S. Dist. LEXIS 82435

(E.D. Pa. Nov. 9, 2006) (interpreting hazing in context of

alleged abuse during fraternity initiation).

There is no support for the argument that hazing

encompasses the treatment that the plaintiff alleges he suffered

at Penn.  The plaintiff claims that his hazing consisted of being

"terrorized" by Professor Cass, and that suffering such treatment

18

was a requirement for "affiliation with Mr. Cass [sic] group of fans" and was a "condition of continued membership in the Penn's graduate class." Pl.'s Opp'n to Mot. to Dismiss at 15. However, the Court finds that the anti-hazing regulations do not encompass an entire graduate class or a specific course in a Ph.D. program. The plaintiff was not participating in an initiation into an organization sanctioned by the defendant. Because the Court does not find that hazing occurred, the plaintiff's claim must be dismissed.

Finally, the defendant argues that the plaintiff's negligence claims must be dismissed as time-barred or alternatively precluded under the gist of the action doctrine. The Court will dismiss the plaintiff's negligence claims as untimely.

Pennsylvania has a two-year statute of limitations for negligence claims. 42 Pa. Cons. Stat. Ann. § 5524(7). The plaintiff does not articulate a basis for his negligence claims, but instead asserts negligence generally in conjunction with his breach of contract claim. As a result, the plaintiff's claim relates to events that occurred between 2003 and the beginning of 2005. However, the plaintiff filed his complaint at least three and a half years after the alleged events occurred, well outside of the limitations period.

Moreover, the Court does not find tolling of the limitations period warranted under the discovery rule. The discovery rule permits tolling of the limitations period until a plaintiff learns both that he has been injured and the cause of his injury. Wilson v. El-Daief, 964 A.2d 354, 359 (Pa. 2009). Although the plaintiff argues that he did not discover "the existence of the charges" until 2008, this is belied by the fact that the plaintiff's claim is based almost exclusively on events that were the subject of the plaintiff's many communications with the University between 2003 and 2005. The Court therefore finds no basis for applying the discovery rule. Because the Court will dismiss the negligence claims as time-barred, it will not address the gist of the action doctrine.

The Court notes that the plaintiff also appears to assert a claim for defamation in Count I, based on the defendant's allegedly false communications to third parties. The defendant argues that the defamation claim must be dismissed as time-barred based on Pennsylvania's one year statute of limitations. 42 Pa. Cons. Stat. Ann. § 5523. However, the plaintiff argues that he only discovered that Penn was providing references to his employer in April 2008. The facts appear to be in dispute as to when the plaintiff learned the predicate facts for his defamation claim, and the discovery rule may apply. Out

of an abundance of caution, the Court will deny the motion to dismiss as to the plaintiff's defamation claim.

### 2. Count II: Fraudulent Misrepresentation

In Count II, the plaintiff brings a claim for fraudulent misrepresentation based on the defendant's representations concerning the conditions for the plaintiff's return from medical leave. The plaintiff alleges that these representations were false or reckless. The defendant moves to dismiss this claim as untimely.

The Court will dismiss the plaintiff's fraudulent misrepresentation claim because it is time-barred. In Pennsylvania, a claim for fraud must be brought within two years of the alleged fraud. 42 Pa. Cons. Stat. Ann. § 5524(7). The alleged misrepresentations occurred over three and a half years prior to the plaintiff's complaint, and at the latest, the plaintiff was aware of them when he was denied return to Penn in January of 2005. Therefore, the discovery rule cannot apply and the claim is untimely.

The Court notes that in his opposition to the motion to dismiss, the plaintiff suggests that he intended to bring a defamation claim in Count II based on the defendant's references to his employer. As noted above, the Court will deny the motion

to dismiss as to the plaintiff's defamation claim because of possible application of the discovery rule.

### 3. Emotional Distress and Punitive Damages

The plaintiff seeks both emotional distress damages and punitive damages. The defendant argues that such damages are unavailable in a breach of contract claim. Although the Court appreciates the defendant's argument, the Court will not rule on the appropriate measure of damages at this time. The plaintiff may still choose to pursue his defamation action or other claims in an amended complaint, and therefore the Court will address the issue of damages when appropriate.

## III. Conclusion

For the reasons stated herein, the Court grants the defendant's motion to dismiss in part and denies it in part.

An appropriate Order shall issue separately.